689 So.2d 1288 (1997)
Carl CITRON, M.D., Petitioner,
v.
Carl SHELL, Sr., Respondent.
No. 96-3705.
District Court of Appeal of Florida, Fourth District.
March 26, 1997.
Marlene S. Reiss of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for petitioner.
Carl Shell, Sr., Pembroke Pines, pro se.
*1289 FARMER, Judge.
We deny certiorari seeking to quash an order that refused to dismiss this medical malpractice action. Although we conclude that plaintiff failed to comply with the applicable pre-suit screening requirements for such actions, we are unable to agree that it was a departure from the essential requirements of law for the trial court to refuse to dismiss the claim with prejudice.
The plaintiff is not represented by counsel. He has sued a medical doctor for malpractice. His hand-drawn amended complaint alleges, in turn, that the doctor, a pathologist, "made errors" in performing tests, in describing a specimen, in reporting test results, in diagnosis, and finally that the doctor never performed any of the purported laboratory tests. He also alleges that the doctor "can not and has not provide[d] actual proof as requested by plaintiffs" that he is duly licensed to practice medicine in the state of Florida. Summing up, his pleading states:
"Plaintiffs[1] certify a good-faith belief that grounds exist for an action against the defendant Carl Citron, M.D., based on RES IPSA loquitur doctrine, and pre-suit investigation by plaintiffs."
. . . . .
"Cause of action is medical malpractice brought on by negligence, fraud of defendant Carl Citron acts as described in the amended complaint."
Upon motion of the doctor, the trial court dismissed his original complaint with leave to amend. At some point around the time of filing the amended complaint, plaintiff sent the doctor a handwritten notice of intent to initiate malpractice litigation. Attached to the document was a billing record (apparently from plaintiff's employer) relating to a tissue mass from a throat, as well as a surgical pathology report from the doctor containing a description of a specimen and a diagnosis. The doctor moved to dismiss the amended complaint on the grounds that it failed to allege or show compliance with the pre-suit screening requirements, including corroboration by a medical expert. The trial court denied dismissal and ordered the doctor to answer the complaint. The doctor then sought review of that order by petition for common law certiorari in this court.
We first consider plaintiff's argument that common law certiorari is not available to review an order denying dismissal of a complaint in a medical malpractice action where plaintiff has failed to comply with the statutory pre-suit screening and corroboration requirements. Primarily, plaintiff contends that the doctor has failed to demonstrate irreparable harm in having to answer and defend the complaint, and that the required corroborating medical opinion is not discoverable. In Pearlstein v. Malunney, 500 So.2d 585 (Fla. 2d DCA 1986), rev. denied, 511 So.2d 299 (Fla.1987), the court faced the same contention as to the lack of irreparable harm in these circumstances. The court held:
"Conceivably, if respondents were to prevail in this proceeding, they might prevail at trial and obtain a judgment against petitioners. On appeal if that judgment was determined to be the product of a fundamentally fair trial, an argument could be made that no useful purpose would be served in remanding the case because cost-saving pretrial procedures were not followed. Therefore, for petitioners to receive the benefits conferred upon them (and, in the estimation of the legislature, upon the citizens of Florida) by the statute, it is necessary and appropriate for us to intervene at this juncture. We recognize, of course, that the mere expense of an unnecessary trial ordinarily would not warrant our issuance of a writ of certiorari. Whiteside v. Johnson, 351 So.2d 759 (Fla. 2d DCA 1977). This rule of law, however, generally comes into play where the error complained of can be remedied by direct appeal. Wright v. Sterling Drugs, Inc., 287 So.2d 376 (Fla. 2d DCA 1973). As we have said, relief by direct appeal would be no relief at all in this case."
*1290 500 So.2d at 587; see also NME Hospitals Inc. v. Azzariti, 573 So.2d 173 (Fla. 2d DCA 1991); Miami Physical Therapy Assoc. v. Savage, 632 So.2d 114 (Fla. 3d DCA 1994). We agree with the analysis of these cases and hold that common law certiorari may be available to review orders denying dismissal of medical malpractice complaints where the petitioner is able to show a departure from the essential requirements of law relating to the failure to comply with the statutory pre-suit screening requirements.
We also reject plaintiff's argument that, as regards the availability of certiorari review, the corroborating opinion from a medical expert is not discoverable and thus, impliedly, the defendant is not irreparably harmed by the failure to furnish such an opinion. He apparently bases this argument on section 766.106(5), which provides that work product generated during the pre-screening process is not discoverable. He fails, however, to consider section 766.203(2), which provides that:
"Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence."
We understand the work product protection in section 766.106 not to apply to the corroborating opinion requirement in section 766.203. Accordingly, we conclude that defendant has satisfied the requirement of irreparable harm necessary to our common law certiorari jurisdiction. See Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996).
We now turn to the issue whether the doctor has shown a departure from the essential requirements of law in the trial court's refusal to dismiss the action on account of plaintiff's failure to produce a corroborating medical expert opinion. Certainly, the text of section 766.203 makes the corroborating medical opinion a condition precedent to the commencement or maintenance of an action alleging medical malpractice. The statutory text states that the opinion "shall be provided ... at the time the notice of intent to initiate litigation is mailed." [e.s.] Thus, the statute clearly requires that the corroborating opinion be furnished before any litigation is actually commenced.
The purpose of this particular statutory condition precedent to suit is to winnow obviously meritless claims from those with arguable merit. See Williams v. Campagnulo, 588 So.2d 982, 983 (Fla.1991) (statute established process "intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding."). The essence of a medical malpractice claim lies in a breach of the prevailing standard of care applicable to the health care provider sued, in this instance a physician.[2] Thus, to prove his claim, plaintiff must produce evidence from someone knowledgeable about the standard of care to show that the physician breached the standard. Requiring a corroborating opinion from a medical expert has a reasonable relationship to the stated goal of reducing medical malpractice litigation, because it prevents a non-expert claimant from naïvely attempting to allege as malpractice something that no one knowledgeable about the standard believes is true.
At the same time, if the courts were to overlook the failure of a claimant to provide such corroboration, it would necessarily destroy the legislative attempt to reduce social and insurance costs incurred in baseless medical malpractice litigation. It would also defeat the right of health care providers under this statute not to be subjected to such claims unless a qualified medical expert *1291 agrees that there has been a departure from the applicable standard of care.
Nonetheless, in construing these statutory conditions precedent to maintaining a medical malpractice action, the supreme court has narrowly read them in light of the rule against limiting access to the courts. Weinstock v. Groth, 629 So.2d 835, 838 (Fla.1993) ("This narrow construction of the chapter 766 presuit notice requirement is in accord with the rule that restrictions on access to the courts must be construed in a manner that favors access."). That guiding principle has L.Ed.2d the court to construe chapter 766 pre-suit requirements in such a way that the failure to comply with them may not result in a final dismissal of the action unless it is clear that the claimant could not possibly cure the defect and still maintain the action in compliance with the statutes.
For example, in Hospital Corp. of America v. Lindberg, 571 So.2d 446 (Fla.1990), the claimant filed an action for medical malpractice within the period of the statute of limitations. He did not send a prior notice of intent to sue, but instead served it with the complaint. After the limitations period had expired, the defendants (providers) moved to dismiss the action on the grounds that the claimants had failed to comply with the statutory requirements. On appeal of the dismissal to this court, we held that the failure was not fatal to the action and directed the trial court to allow the claimants to amend their complaint to demonstrate compliance. The supreme court approved our decision, saying:
"We therefore hold that, in medical malpractice actions, if a presuit notice is served at the same time as a complaint is filed, the complaint is subject to dismissal with leave to amend. The plaintiff may subsequently file an amended complaint asserting compliance with the presuit notice and screening requirements of section 768.57 and the presuit investigation and certification requirements of section 768.495(1). We note, however, that counsel for the defendants will be entitled to fees and costs resulting from the premature filing of the lawsuit, and such fees could be assessed against the plaintiff. Further, willful noncompliance with the presuit screening process can still result in dismissal of claims or defenses, as provided in section 768.57(3)(a)."
571 So.2d at 449. Under this holding, the claimant who fails to comply with the conditions precedent to suit in chapter 766 should be given an opportunity to cure the noncompliance within any unexpired portion of the limitations period.
Similarly, in Ingersoll v. Hoffman, 589 So.2d 223 (Fla.1991), the court followed Lindberg. In that case, the defendant waited until trial to raise a contention for the first time that the claimant had failed to provide him with a pre-suit notice of intent to sue. The trial judge dismissed the suit. The district court affirmed on the basis that the failure to comply deprived the trial court of jurisdiction to proceed. On review, the supreme court quashed the decision on the basis of Lindberg, which had expressly held that the pre-suit requirements were merely conditions precedent to suit and did not implicate subject matter jurisdiction. The court also determined that the failure to comply with pre-suit requirements is an affirmative defense that the defendant must plead affirmatively, and that the defendant had himself failed to plead the noncompliance. Addressing the question whether defendant should be permitted to amend his answer to assert the defense in light of the fact that the limitations period had since lapsed, the court held that such an amendment should be permitted only if the amendment would not prejudice the claimant. The court held that such an amendment would be unfair, saying:
"Had [defendant] timely raised the defense of failure to follow the requirements of section 768.57, the [claimants] could have attempted to comply with the statute within the period of the statute of limitations."
589 So.2d at 225.
Williams v. Campagnulo, 588 So.2d 982 (Fla.1991), is the functional opposite of Ingersoll. There defendant timely moved to dismiss for statutory noncompliance, but the trial court denied the motion, and the defendant answered with an affirmative defense of noncompliance. Later the trial court granted a summary judgment in favor of the defendant *1292 on the basis of noncompliance. We reversed on appeal. The supreme court disapproved our decision, citing Ingersoll and Lindberg. The court specifically stated that "because no notice was filed within the statute of limitations period, this cause must be dismissed." 588 So.2d at 983. As we read this decision, the court based the dismissal on the failure of the claimant, who was on notice of the deficiency, to seek leave to cure it before the statute of limitations had run.
Even more recently, in Kukral v. Mekras, 679 So.2d 278 (Fla.1996), the court disapproved the dismissal of a complaint for failure to comply with the pre-suit requirements where the statute had run when the dismissal was ordered and the claimant cured the deficiency before the expiration of the limitations period. There the claimant served a notice of intent but without the corroborating opinion. Six months later, he sent the defendant an unsworn opinion, and a few days later he followed that with a sworn opinion. Claimant then filed suit just before the expiration of the limitations period. Sometime before trial, and after the limitations period had run, the defendant moved to dismiss on the grounds that the claimant had not complied with chapter 766's pre-suit requirements. The trial court agreed and dismissed. The third district affirmed. The supreme court, however, reversed. Explaining its decision, the court stated:
"this Court has held that the failure to comply with the presuit requirements of the statute is not necessarily fatal to a plaintiff's claim so long as compliance is accomplished within the two-year limitations period provided for filing suit."
679 So.2d at 283. Quoting from Williams, the court said:
"We made it clear in Ingersoll ... and in Lindberg that compliance with the prefiling notice requirement of section 768.57 was a condition precedent to maintaining an action for malpractice and, although it may be complied with after the filing of the complaint, the notice must be given within the statute of limitations period." [e.s.]
Id. Concluding, the court stated:
"We agree with the proposition that the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses."
679 So.2d at 284.
Along the way the court cited other decisions, and either expressly or impliedly approved all of them, involving a failure to comply precisely with the corroborating opinion requirement, where the claimant was permitted to amend after the filing of the action to show compliance that was, or could have been, within the limitations period. 679 So. 2d at 283-285; see Shands Teaching Hosp. v. Miller, 642 So.2d 48 (Fla. 1st DCA 1994), case dismissed, 657 So.2d 1163 (Fla.1995); Suarez v. St. Joseph's Hosp., Inc., 634 So.2d 217 (Fla. 2d DCA 1994); Miami Physical Therapy Assoc., Inc. v. Savage, 632 So.2d 114 (Fla. 3d DCA 1994); Stein v. Feingold, 629 So.2d 998 (Fla. 3d DCA 1993); Ragoonanan v. Associates in Obstetrics & Gynecology, 619 So.2d 482, 484 (Fla. 2d DCA 1993); Gargano v. Costarella, 618 So.2d 786 (Fla. 5th DCA 1993); and Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), rev. denied, 604 So.2d 486 and 487 (Fla.1992).
In the case we face today, it is apparent that the claimant has never furnished the provider with the necessary pre-suit corroborating opinion from a medical expert. At the time of the trial court's denial of the motion to dismiss in this case, there was still at least six months left in the limitations period. Since this case has been in this court, the limitations period may arguably have expired. Although we agree with the provider here that claimant has failed to produce the corroborating opinion and that the trial court technically erred in failing to dismiss the amended complaint with leave to amend to show compliance within the limitations period, we are unable to agree that in these circumstances the trial court's decision amounts to a departure from the essential requirements of law. It is clear to us that the court could not have granted a final dismissal, because claimant could conceivably still have cured the deficiency by furnishing a *1293 corroborating opinion within the limitations period.
We deny the petition and remand to the trial court with instructions to dismiss the amended complaint with leave to file a second amended complaint showing compliance with the corroborating medical expert opinion requirement within such reasonable period of time as the court deems just under the circumstances.
GLICKSTEIN and DELL, JJ., concur.
NOTES
[1] The pleadings in the trial court show two plaintiffs, Carl Shell, Sr., and Carl Shell, Jr., but the petition in this court names only the father.
[2] See § 766.102(1), Fla.Stat.(1995) ("In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider.").